**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| **THAD TATUM** | * | **CIVIL ACTION 12-2341** |
| | * | |
| **VERSUS** | * | **SECTION "A" (1)** |
| | * | |
| **AUDUBON NATURE INSTITUTE, INC.** | * | |

*******************************************

**MEMORANDUM IN SUPPORT OF AUDUBON NATURE INSTITUTE, INC.'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

**NOW INTO COURT**, through the undersigned counsel, comes Defendant, Audubon Nature Institute, Inc. ("Audubon"), who respectfully submits this Memorandum in Support of its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), seeking the dismissal of Plaintiff Thad Tatum's Complaint for lack of subject matter jurisdiction. For the following reasons, Audubon respectfully requests that this Court grant the Motion, and dismiss Mr. Tatum's Complaint with prejudice.

## I. Introduction

> *Why would an individual like Plaintiff be in such a rush to file suit when only injunctive relief is available? Wouldn't conciliation and voluntary compliance be a more rational solution? Of course it would, but pre-suit settlements do not vest plaintiffs' counsel with an entitlement to attorney's fees… Moreover, if a plaintiff forebears and attempts pre-litigation resolution, someone else may come along and sue first. The current ADA lawsuit binge is, therefore, essentially driven by economics-that is, the economics of attorney's fees.*
>
> *Rodriguez v. Investco, L.L.C.*, 305 F. Supp. 2d 1278, 1281-82 (M.D. Fla. 2004).

The question presented in this case is one with which an increasing number of federal district and appellate courts have had to grapple in recent years—whether or not to allow "shotgun" style Americans With Disabilities Act[1] (ADA) lawsuits to be brought in federal court

[1] 42 U.S.C §12101, et. seq.

by a small number of attorneys on behalf of a handful of Plaintiffs against dozens of local businesses, where the Plaintiffs in question have little to no actual knowledge of the alleged violations, and where the primary purpose of the suits appears to be the generation of attorney's fees. Many Courts have reached the conclusion that Plaintiffs such as Mr. Tatum, who have little to no actual knowledge of the alleged ADA violations which ostensibly form the basis of their lawsuit, and who are represented by counsel who file dozens, or even hundreds, of boilerplate ADA lawsuits, lack standing to pursue their claims.[2]

To the best of the undersigned's knowledge, this Eastern District of Louisiana has yet to consider this important issue, and the Court's ruling in this case may well determine whether or not this District, and the individuals and businesses which reside within it, will be besieged by these sorts of lawsuits in the future. Audubon respectfully submits that a careful review of all of the pertinent facts should result in the conclusion that Mr. Tatum not only lacks standing in this case, but in every other ADA lawsuit which he has brought in this District, with one important, and telling, exception, which will be discussed in detail below.[3] For those reasons, Audubon's Motion to Dismiss should be granted, and Mr. Tatum's claims against it should be dismissed with prejudice.

## II. <u>Factual and Procedural History</u>

On July 17, 2012, Thad Tatum ("Mr. Tatum"), a paraplegic who requires the use of a wheelchair or walker for mobility, allegedly visited the Audubon Aquarium of the Americas

---

[2] *See Chapman v. Pier I Imports, Inc*, 631 F. 3d.939 (9th Cir. 2011) (9th Circuit found that a plaintiff lacked standing where he failed to allege what the barriers to his access were and how he was affected by them); *Norkunas v. Seahorse NB, LLC,* 720 F. Supp 2d 1313 (M.D. Fla. 2010) (Court found that "without actual knowledge of barriers, plaintiff has not suffered an 'injury-in-fact' which establishes standing at the time of the filing of the complaint."); *Brother v. CPL Investments, Inc.*, 317 F. Supp. 2d 1358 (S.D. Fla. 2004) ( "Plaintiffs do not have standing to complain about alleged barriers which they were unaware of at the time of filing their complaint.")

[3] See Section d(i)(5), *infra*.

("Aquarium") for the first time (R. Doc. 1 ¶5).[4] On July 18, 2012, Mr. Tatum allegedly returned to the Audubon Aquarium of the Americas in order to see a movie at the IMAX Theater. He claims that he used the same route to access the facilities, and was able to access the ticket counter, purchase a movie ticket, and enjoy a movie at the IMAX Theater.[5]

Approximately two months later, Mr. Tatum, represented by Andrew Bizer of The Bizer Law Firm, brought the instant suit against Audubon under Title III of the Americans with Disabilities Act ("ADA"), alleging that there were multiple ADA compliance issues at the Aquarium that hindered his access to the facility (R. Doc. 1). Neither Mr. Tatum, nor Mr. Bizer, made any effort to contact Audubon prior to filing suit in order to address or attempt to resolve the ADA violations which they allege exist at the Aquarium. In Paragraph 14 of his Complaint (R. Doc. 1 at ¶14), Mr. Tatum alleges that he personally observed and encountered the following problems that impeded his access to the facility:

A. There is no compliant accessible route from the street to the facility;

B. There are ramps at the facility that do not have level landings and/or contain excessive slopes;

C. There are counters that exceed the maximum heights allowed;

D. The facility lacks disabled seating;

E. Certain elevated sections of the facility are accessible only via stairs and do not have ramps;

F. There are accessible routes that do not have the proper surface textures; and

G. The restrooms in the facility are non-complaint.

---

[4] During his deposition, Mr. Tatum indicated that he uses his wheelchair for mobility about "88 to 90 percent" of the time. See deposition of Thad Tatum, page 17, attached as Exhibit A-1.

[5] Mr. Tatum presents conflicting testimony about the IMAX movie he allegedly saw at the Aquarium. See movie ticket stubs produced by Mr. Tatum in response to Audubon's Interrogatories and Requests for Production of Documents, attached as Exhibit B, which states he saw the movie "Born To Be Wild 3D." Mr. Tatum testified that the movie was "maybe an hour and 45 minutes." *See* Exhibit A-1, page 30. However, the run time of "Born To Be Wild 3D" is only 40 minutes, according to IMAX. *See* Exhibit C. Furthermore, Mr. Tatum is only able to recall that the movie that he saw was "about different animals." *See* Exhibit A-1 at page 29.

Mr. Tatum brought the instant suit, the ninth ADA lawsuit which he had filed in a period of approximately ninety (90) days in this District, on September 24, 2012.[6] Audubon answered the suit on November 8, 2012, denying the allegations and setting forth affirmative defenses. Audubon now asks this court to dismiss Mr. Tatum's suit pursuant to Federal Rule of Civil Procedure 12(b) (1) for lack of subject matter jurisdiction because Mr. Tatum lacks standing under Title III of the ADA.

## III. Law and Argument

### a. Standard of Review

"A motion under 12(b)(1) should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. 'A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case.'"[7] In deciding a Motion to Dismiss pursuant to Rule 12(b)(1), the court may dismiss based on any one of the following: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."[8] "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction-its very power to hear the case-there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."[9]

---

[6] To date, Mr. Tatum has filed 12 lawsuits, including one against Checkers, who has been made a Defendant in other suits brought by the Bizer Law Firm. *See* Exhibit D.

[7] *Home Builders Ass'n of Mississippi, Inc. v. City of Madison, Miss.*, 143 F.3d 1006, 1010 (5th Cir. 1998), quoting *Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1187 (2d Cir.1996).

[8] *Freeman v. United States*, 556 F.3d 326, 334 (5th Cir. 2009).

[9] *Williamson v. Tucker*, 645 F.2d 404, 412-13 (5th Cir. 1981).

Mr. Tatum's Complaint, coupled with the undisputed facts from Mr. Tatum's deposition, indicate that he lacks standing to bring this suit under Title III of the ADA. As such, this Court lacks subject matter jurisdiction, and Mr. Tatum's suit should be dismissed with prejudice.

### i. <u>Title III of the Americans with Disabilities Act</u>

The Americans with Disabilities Act was created for the purpose of establishing "a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities" and providing "clear, strong, consistent, enforceable standards addressing discrimination against individuals with disabilities."[10] Title III of the ADA generally prohibits discrimination against any individual "on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."[11]

Pursuant to the requirements of the ADA, injunctive relief is available "to any person who is being subjected to discrimination on the basis of disability in violation of [Title III]."[12] Additionally, the court may allow the prevailing party to recover attorney's fees.[13]

### ii. <u>Standing Under Title III of the ADA</u>

In order to satisfy the constitutional requirements for standing, a plaintiff must demonstrate three elements: "(1) [he] has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly

[10] 42 U.S.C. § 12101(b) (1) and (2).
[11] 42 U.S.C.A. § 12182(a).
[12] 42 U.S.C. § 12188(a)(1).
[13] 42 U.S.C. § 12205.

traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."[14]

Title III of the ADA gives any person who is subjected to discrimination based on a disability a cause of action, but "whether a plaintiff has a cause of action is a distinct issue from whether she has standing under Article III."[15] "Thus, because a federal plaintiff must demonstrate standing for each type of relief sought, and the relief available to a Title III ADA plaintiff is injunctive relief, a plaintiff must satisfy the Article III standing requirements for injunctive relief."[16]

Because injunctions "regulate future conduct, a party has standing to seek injunctive relief only if the party alleges…a real and immediate—as opposed to a merely conjectural or hypothetical—threat of *future* injury."[17] "Asserting a past injury is not enough. A past "exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects."[18] As such, a disabled person bringing suit under Title III of the ADA must be able to show more than just the fact that they may have been injured in the past; they must also show the threat of future injury. "Although, in the context of Title III of the ADA, plaintiffs need not engage in the "futile gesture" of visiting a building containing known barriers that the owner has no intention of remedying, *see* 42 U.S.C. § 12188(a) (1), they must at least prove **actual knowledge** of the barriers and show that they would visit the building in the imminent future but for those barriers."[19]

---

[14] *Friends of the Earth, Inc. v. Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S. Ct. 693, 704, 145 L. Ed. 2d 610 (U.S.S.C. 2000), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).
[15] *Betancourt v. Federated Dept. Stores*, 732 F. Supp. 2d 693, 701-02 (W.D. Tex. 2010).
[16] *Id.*
[17] *Steven Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1373 (M.D. Fla. 2004).
[18] *Id.*, citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983).
[19] *Small v. Gen. Nutrition Companies, Inc.*, 388 F. Supp. 2d 83, 87 (E.D.N.Y. 2005) (emphasis added); *See also*: *Hubbard v. 7-Eleven, Inc. et al.*, 433 F. Supp.2d 1134 (S.D. Cal. 2006) ("A plaintiff suffers an injury from ADA

### iii. The Emergence of a "Cottage Industry" of ADA litigation

As mentioned above, in addition to the injunctive relief allowed by the ADA, attorney's fees can also be recovered. This has led to the emergence of what one Court has described as a "cottage industry" of ADA litigation.[20] Jurisdictions around the country have taken notice of the fact that some lawyers appear to be subverting the true purpose of the ADA for their own financial gain. The method for doing so is straightforward: an attorney may identify, on his own, or with the help of an expert, technical violations of the ADA at a particular business, and then send a disabled individual to that establishment in an effort to create standing to bring suit. Then, instead of notifying the business of the alleged violations in order to remedy the matter amicably, the attorney files a lawsuit against each business. The business, faced with the possibility of protracted litigation, usually offers to settle the case, and the attorney collects his fees. The pervasive practice of using a handful of plaintiffs to file large numbers of lawsuits against various businesses in an attempt to obtain attorneys' fees is an abuse of the ADA.

It has become clear that "the means for enforcing the ADA (attorney's fees) have become more important and desirable than the end (accessibility for disabled individuals)."[21] Such schemes have the potential to turn disabled plaintiffs into "professional pawn[s] in an ongoing scheme to bilk attorney's fees from Defendant [businesses]."[22]

In an attempt to curb the filing of the above-described "shotgun litigation" by one plaintiff against a multitude of businesses, many courts have held that a plaintiff lacks standing

---

noncompliance if he personally encounters the barrier complained of, or if he has actual knowledge of the barrier complained of and has been deterred from visiting the place of public accommodation because of the barrier.") *Norkunas v. Seahorse NB, LLC*, 720 F. Supp 2d 1313 (M.D. Fla. 2010) (Court found that "without actual knowledge of barriers, plaintiff has not suffered an 'injury-in-fact' which establishes standing at the time of the filing of the complaint."); *Brother v. CPL Investments, Inc.*, 317 F. Supp. 2d 1358(S.D. Fla. 2004) (Plaintiffs do not have standing to complain about alleged barriers which they were unaware of at the time of filing their complaint.")

[20] *Rodriguez v. Investco, L.L.C.*, 305 F. Supp. 2d 1278, 1281-82 (M.D. Fla. 2004).

[21] *Steven Brother v. Tiger Partner, LLC*, 331 F. Supp.2d 1368, 1375 (M.D. Fla. 2004).

[22] *Rodriguez v. Investico, LLC*, 305 F. Supp.2d 1278, 1285 (M.D. Fla. 2004).

under Title III of the ADA "unless she alleges a concrete, particularized, and credible plan to return to the public accommodation that is currently discriminating against her on a specific future date. These courts hold that the likelihood of future injury is measured by whether the plaintiff is likely to return to the defendant's business."[23] Courts determine whether a plaintiff is likely to return by applying the following factors: "(1) the proximity of the defendant's business to the plaintiff's residence, (2) the plaintiff's past patronage of the defendant's business, (3) the definitiveness of the plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the defendant." [24] Additionally, courts have held that the fact that a single plaintiff files a large number of ADA lawsuits may raise concerns about the plaintiff's credibility, especially regarding the Plaintiff's intent to return.[25]

**iv. <u>5th Circuit jurisprudence</u>**

While the 5th Circuit Court of Appeals has not directly considered the proper way to approach standing in an ADA Title III claim, the 5th Circuit has held that "[t]o obtain standing for injunctive relief, a plaintiff must show that there is reason to believe that he would directly benefit from the equitable relief sought. In other words, a plaintiff must face a threat of present or future harm."[26]

In the instant matter, Mr. Tatum is unable to demonstrate that he would directly benefit from the injunctive relief that he seeks because he has not established: (1) that he has suffered any real harm, and (2) that he will suffer any future harm. In fact, Mr. Tatum has been unable to articulate any specific injury at all, as demonstrated by his deposition wherein he was unable to

---

[23] *Betancourt v. Federated Dept. Stores*, 732 F. Supp. 2d 693, 701-02 (W.D. Tex. 2010), citing *Access 4 All, Inc. v. Wintergreen Commercial*, Civ. A. No. 3:05-CV-1307, 2005 WL 2989307 at *3 (N.D.Tex. Nov. 7, 2005).
[24] *Id*.
[25] *Harris v. Stonecrest Auto Center, LLC*, 472 F. Supp.2d 1208 (S.D. Cal. 2007), wherein the court considered the plaintiff's "extensive history of ADA litigation as part of its factual determination of the likelihood that he would return" to the defendants' business location.
[26] *Plumley v. Landmark Chevrolet, Inc.*, 122 F.3d 308, 312 (5th Cir. 1997).

describe any of the alleged barriers which he claims exist at the Aquarium. Mr. Tatum does not get to the second half of the analysis regarding future harm because he has not demonstrated that he has suffered any injury-in-fact. Mr. Tatum has little to no actual knowledge of the barriers to access that he alleges in his suit. As such, his Complaint against Audubon should be dismissed with prejudice.

**b. <u>Mr. Tatum was unable to identify any concrete or particularized problem at the Aquarium.</u>**

Mr. Tatum's suit against Audubon identified at least seven (7) issues of alleged noncompliance at the Aquarium facility; however, when questioned about the issues that he experienced when he travelled to the Aquarium, Mr. Tatum was entirely unable to identify any problems he had without being prompted.[27] Even with prompting, he could not recall the location or substance of any specific problem that he alleged. When initially asked why he brought an ADA noncompliance suit against Audubon, Mr. Tatum could only vaguely recall three things: (1) an issue with one ramp that he alleged was steep, (2) two counters where he allegedly experienced difficulty due to their height, and (3) not being able to get up a set of stairs. Specifically:

> Examination by Mr. DeShazo: Tell me why you sued the Audubon Nature Institute, Inc.
>
> Answer by Mr. Tatum: Well, if I can remember, and I don't want to guess at anything, I remember trying to get there and there is a steep entrance ramp. I remember the counter being too high at the gift shop, and I think it was the receptionist desk/information desk, if I'm not sure. But also I was trying to get upstairs and there was no way for me to get up there.

[27] In order to even respond to the questions during the deposition, Mr. Tatum had to be given a copy of his lawsuit against Audubon, which he had never seen before. *See* Exhibit A-1 at page 34. In fact, Mr. Tatum required a copy of each of the lawsuits he has filed in the Eastern District of Louisiana in order to answer any questions relating to the suits. It is compelling that when Mr. Tatum was not presented with his lawsuit against Walgreens, he was unable to articulate any problems. ("Question: Do you remember what was wrong with the Walgreens that you sued over? Answer: It should be in the complaint.") *See* Exhibit A-4 at page 152.

Q: Anything else?

A: I'm not certain. I don't know specifically.[28]

Mr. Tatum brought seven allegations of noncompliance against Audubon; yet, he could only vaguely remember three problems he allegedly encountered. Even then, he was unable to describe those three problems with any specificity regarding the type of access problem he may have had.

During his deposition, Mr. Tatum was specifically questioned about each of the allegations of noncompliance made in his Complaint. Each time he was asked about a different allegation in his Complaint, Mr. Tatum was unable to remember the problem he says that he encountered, stating that he would need to revisit the property in order to remember what any of the problems were.

With respect to the allegation in Paragraph 14(a) of his Complaint (R. Doc. 1 ¶ 14) that there was no compliant accessible route from the street to the facility, Mr. Tatum stated that he got off the bus, "and this is probably no fault of the aquarium, but the route there going over the tracks and all these different little things like that, you know, when I get there, there wasn't nothing—someone in the handicap route go this way or someone go that way and it just wasn't accessible to me."[29] Mr. Tatum was, however, able to get in to the facility.[30] When asked again what was specifically wrong with the path from the street to the facility, Mr. Tatum replied that he would need "an in-camera inspection or [he] would have to go back to that scene."[31] He was unable to comment on how the path was noncompliant, as he alleged in his Complaint.

[28] *See* Exhibit A-1 at 27-28.
[29] *Id*. at page 42.
[30] *Id*. at page 43.
[31] *Id*. at pages 43-44.

Following his first visit to the Aquarium, Mr. Tatum returned to the Aquarium the next day to see the IMAX movie; he clearly was not deterred by an allegedly noncompliant route.

With respect to the allegation in Paragraph 14(b) of his Complaint (R. Doc. 1 ¶ 14) that there were ramps at the facility that do not have level landings or contained excessive slopes, Mr. Tatum was unable to answer any questions about where he encountered such ramps or where the ramps that he alleges were noncompliant were located—stating only that he "would have to see it again" in order to remember.[32]

With respect to the allegation in Paragraph 14(c) of his Complaint (R. Doc. 1 ¶ 14) that there are counters at the facility that exceed the maximum heights allowed, Mr. Tatum was able to recall two counters that he alleges are noncompliant: (1) the gift shop counter, and (2) an information counter; however, he was unable to recall where the information counter that he had problems accessing was located—stating that he would "have to have an either in-camera inspection or have to visit again" because he couldn't remember where it was.[33]

When asked how he knew that the counters exceeded the maximum heights, as he alleged in his Complaint, Mr. Tatum said "I don't know exactly. I just know that I had the difficulty that I had—everything I brought to him [Mr. Bizer] it was causing my difficulties."[34] In fact, when asked if he had any actual knowledge of whether or not the things he alleged in his Complaint were in fact violations of the ADA, Mr. Tatum stated that "anything [he] feel like is a inconvenience" to him likely violates the ADA.[35]

With respect to the allegation in Paragraph 14(d) of his Complaint (R. Doc. 1 ¶ 14) that the facility lacks disabled seating, Mr. Tatum could not remember where the lack of disabled

[32] *Id*. at 44.
[33] *Id*. at 44-45.
[34] *Id*. at 45.
[35] *Id*. at 47-48.

seating was located within the facility or describe the location in any way—stating that he "would have to have an in-camera inspection. [He] would have to go revisit the place to show" where the Aquarium allegedly lacks disabled seating.[36]

With respect to the allegation in Paragraph 14(e) of his Complaint (R. Doc. 1 ¶ 14) that certain elevated sections of the facility are accessible only via stairs and do not have ramps, Mr. Tatum, once again, could not recall where inside the facility this was located, or what exhibits he alleges he could not see—stating he "would have to have an in-camera inspection. [He] would have to revisit that place again."[37]

With respect to the allegation in Paragraph 14(f) of his Complaint (R. Doc. 1 ¶ 14) that there are accessible routes that do not have the proper surface textures, Mr. Tatum was unable to recall any specific place inside the Aquarium where he encountered any improper surface textures or bricks that were unlevel—stating once again that he "would have to get an in-camera inspection. [He] would have to revisit it again."[38]

With respect to the allegation in Paragraph 14(g) of his Complaint (R. Doc. 1 ¶ 14) that the restrooms in the facility are noncompliant, Mr. Tatum did not have any specific knowledge of how or why the restrooms were noncompliant.[39]

Furthermore, Mr. Tatum could not answer any questions with respect to the allegations he made in Paragraph 15 of his Complaint, wherein he states that "Defendant continues to discriminate against Plaintiff and other similarly situated by failing to make reasonable modifications in policies, practices, and procedures when such modifications are necessary to provide Plaintiff an equal opportunity to participate in or benefit from the goods, services,

[36] *Id.*
[37] *Id* at 49.
[38] *See* Exhibit A-2 at 50.
[39] *Id.*

facilities, privileges, advantages, and accommodations which Defendant offers to the general public."[40] When asked specifically what goods, services or facilities he did not have an equal opportunity to participate in, Mr. Tatum did not know; he repeatedly replied that he would need to "revisit his place" to point out the problems he had.[41]

Moreover, Mr. Tatum alleges in this Complaint that he is an "ADA Tester" (R. Doc.1 ¶20), yet when asked if he was, in fact, an ADA tester, Mr. Tatum did not even know what that phrase meant:

Examination by Mr., DeShazo: Are you an ADA tester, Mr. Tatum?

Answer: Meaning?

Question: Well, that's a fair point. Do you know what an ADA tester is?

Answer: No. I would know if you explain it to me.

Question: But just as we sit here today, you don't know what an ADA tester is?

Answer: No.[42]

Mr. Tatum states that his goal in bringing this lawsuit against Audubon is to achieve compliance with the ADA; however, Mr. Tatum made no effort to contact Audubon prior to bringing suit because he "didn't feel the need to do so" and because he does not "go there every day."[43]

c. **Mr. Tatum did not suffer a "concrete and particularized" injury in fact in order to establish standing.**

Given that Mr. Tatum cannot articulate anything about the problems he allegedly encountered at the Aquarium, it is clear that he has not suffered a concrete and particularized injury-in-fact, as required to establish standing, and therefore inquiry as to future harm is not

[40] R. Doc 1 ¶15.
[41] *See* Exhibit A-2, pages 52-54.
[42] *Id*. at 58.
[43] *Id*. at 59 and Exhibit A-3 at 137.

necessary to resolve the question of standing. Furthermore, Mr. Tatum's prodigious filings of ADA lawsuits against local businesses operating in the Eastern District of Louisiana should raise serious questions about his credibility, especially with respect to his intentions to return to the Aquarium.

As his deposition demonstrates, Mr. Tatum lacks actual knowledge of the barriers that he alleges exist at the Aquarium, which is required in order to establish standing. In *Chapman v. Pier I Imports, Inc.*, a plaintiff was found to lack standing to bring suit under Title III of the ADA because he did not allege the barriers that he based his claim upon "and how his disability was affected by them [the barriers] so as to deny him the 'full and equal' access that would satisfy the injury-in-fact requirement (i.e. that he personally suffered discrimination under the ADA on account of his disability.)"[44] Similarly, Mr. Tatum, who is unable to even generally describe the barriers he alleges that he encountered at the Aquarium, fails to establish an injury-in-fact. He lacks the actual knowledge of the barriers upon which he bases his claim to establish that he suffered any injury at all, and he failed to establish that he suffered discrimination as a result of his disability. As other courts have found, "[w]ithout actual knowledge of barriers, Plaintiff has not suffered an 'injury in fact' which establishes standing at the time of the filing of the complaint."[45] Given his lack of knowledge about the problems that he allegedly encountered at the Aquarium, it is clear that Mr. Tatum has not established an injury-in-fact. As such, he lacks standing to bring this suit.

[44] *Chapman v. Pier I Imports, Inc*, 631 F. 3d.939 (9th Cir. 2011).
[45] *Norkunas v. Seahorse NB, LLC*, 720 F. Supp 2d 1313 (M.D. Fla. 2010); *See also Access Now, Inc. v. S. Florida Stadium Corp*., 161 F. Supp. 2d 1357, 1366 (S.D. Fla. 2001); *Harty v. SRA/Palm Trails Plaza, LLC*, 755 F. Supp. 2d 1215, 1217 (S.D. Fla. 2010) (Plaintiff must have actual knowledge of barriers to have standing); *Access 4 All, Inc. v. G & T Consulting Co., LLC*, 06 CIV. 13736 (DF), 2008 WL 851918 (S.D.N.Y. Mar. 28, 2008) (same).; *Kramer v. Midamco*, 656 F. Supp. 2d 740, 747 (N.D. Ohio 2009) (same).

**d. <u>Mr. Tatum and Mr. Bizer's filing history in the Eastern District of Louisiana indicates that the multitude of suits filed are nothing more than an attempt to obtain attorney's fees from local businesses.</u>**

In addition to the suit filed against Audubon alleging noncompliance with the ADA, Mr. Tatum has also brought 11 other nearly identical suits against other businesses in the Eastern District of Louisiana in 2012 and 2013.[46] The boilerplate language of each suit is nearly identical to the suit brought against Audubon, with the same alleged violations recycled against each business. In each Complaint filed, Paragraph 14 of each suit contains the alleged violations of the defendant's premises.

**i. <u>Mr. Tatum's lawsuits in the Eastern District of Louisiana</u>**

When specifically questioned about each of the lawsuits he filed in 2012, Mr. Tatum's response was the same as it was to his suit against Audubon—he could remember virtually nothing about the alleged violations. In all but one case, Mr. Tatum had no personal direct knowledge of any of the allegations he made; he was unable to articulate the problems that he alleges he encountered, which indicates that he has no personalized stake in the outcomes of the suit. Additionally, in all but one case, Mr. Tatum has not been back to the Defendants' facilities since filing the lawsuit.

**1. <u>Tatum v. Commercial Properties Realty Trust, LLC</u>**

On June 12, 2012, Mr. Tatum filed suit against Commercial Properties Realty Trust, LLC. When asked why he brought suit against Commercial Properties Realty Trust, LLC, Mr. Tatum could not recall any specific issues he may have had with the defendant.[47] When asked if he knew what Commercial Properties Realty Trust, LLC does, Mr. Tatum implied that he did

---

[46] For ease of reference, Audubon has compiled a table of cases filed by Mr. Bizer in the Eastern District of Louisiana, which references, by case name and number, the lawsuits filed by Mr. Tatum, which is attached as Exhibit D.
[47] *See* Exhibit A-2 at page 69.

not, stating that he "would have to revisit to see why I went to it and what was the purpose of me going there for."[48] Even when informed that Commercial Properties Realty Trust, LLC was the company that operated the Sena Mall, Mr. Tatum could not remember the name of the store he visited at the Sena Mall nor could he estimate the date when he visited the property.[49] Significantly, Mr. Tatum could not recall any of the barriers that he may have encountered at the Sena Mall, stating that he "would have to revisit to show you" the problems he alleges he encountered[50]

Mr. Tatum was specifically asked about each of the allegations that he made against Commercial Properties Realty Trust, LLC. He was unable to recall or describe, with any specificity, any of the barriers that he alleges that he encountered—stating that he would have to revisit the Sena Mall in order to demonstrate the problems.[51]

**2. <u>Tatum v. Burger King Corporation</u>**

On June 12, 2012, Mr. Tatum filed suit against Burger King Corporation. Mr. Tatum did not recall the specific problems that he encountered at Burger King, stating that he "would have to go over there and find out why" he brought suit against them.[52] When questioned about the specific barriers he alleged about Burger King, Mr. Tatum similarly responded that he needed to revisit Burger King to point out the barriers.[53] Mr. Tatum agreed that his only recollection of any of the allegations that he made against Burger King was based upon what he was reading in the copy of the lawsuit that had been placed in front of him.[54]

---

[48] *Id*. at page 70.
[49] *Id*. at page71-72.
[50] *Id*.
[51] *Id*. at pages 74-75, 78-79.
[52] *Id*. at page 84.
[53] *Id*. at page 86, 95.
[54] *Id*. at 86-87.

Mr. Tatum brought facially implausible claims in his suit against Burger King. Mr. Tatum alleges in Paragraph 14 of his Complaint that "(e) there is no compliant accessible route from the parking area to the facility," yet also argues "(f) there is no compliant accessible route from the street to the facility." Mr. Tatum had no explanation for why, on a single visit to Burger King, where he was driven to the facility, he would have gone from a parking space, to the street, and then back into the store.[55] It is simply implausible that he would have actually encountered any allegedly noncompliant route from the street to the store in this scenario. Mr. Tatum was unable to provide any explanation as to how he knew that there were problems with both routes.

**3. <u>Tatum v. Barnes and Noble Booksellers, Inc.</u>**

On June 12, 2012, Mr. Tatum filed suit against Barnes and Noble Booksellers, Inc. When asked about the problems he encountered at Barnes and Noble, Mr. Tatum was able to recall that a ramp leading into the store from the parking lot was steep.[56] He did not remember any of the other problems that he encountered offhand.[57] When Mr. Tatum was prompted about the other allegations he made against Barnes and Noble, he stated that he had no specific recollection of the problems.[58]

Similarly to his suit against Burger King, Mr. Tatum also made conflicting allegations in his suit against Barnes and Noble, simultaneously alleging in Paragraph 14 of his Complaint that "(e) there is no compliant accessible route from the parking area to the facility," and also "(f) there is no compliant accessible route from the street to the facility." Like his explanation above, Mr. Tatum had no justification for why, on a single visit to Barnes and Noble, where he was driven to the facility, he would have gone from a parking space, to the street, and then back into

[55] *Id*. at 89-95.
[56] *See* Exhibit A-3 at 102.
[57] *Id*. at 104.
[58] *Id*. at 105-106.

the store. It is simply implausible that he would have actually encountered any allegedly noncompliant route from the street to the store in this scenario. Mr. Tatum was unable to provide any explanation as to how he knew that there were problems with both routes.

Interestingly, when asked about the services that Mr. Tatum alleges he did not receive as a result of his disability, Mr. Tatum claimed that he had a problem with a counter being too high and that he had a problem with a bathroom at the Barnes and Noble store; however, Mr. Tatum's Complaint against Barnes and Noble does not make any mention of problems with counters or bathrooms.[59]

### 4. **Tatum v. Gautreaux Family, LLC**

On June 12, 2012, Mr. Tatum filed suit against Gautreaux Family, LLC. Mr. Tatum did not know what type of operation Gautreaux Family, LLC was; he had to be prompted to look at the text of the lawsuit, which revealed that the defendant operated the Independence Mall.[60] Mr. Tatum alleged that he had been to an ice cream place at the Independence Mall, yet he could not remember the name of the store—even when prompted with several different chains of ice cream stores.[61]

### 5. **Tatum v. Fair Zone Food Store #2, LLC**

On June 26, 2012, Mr. Tatum filed suit against Fair Zone Food Store #2, LLC. Out of the 11 lawsuits he filed in 2012, Mr. Tatum admitted going back to only this location. Mr. Tatum's experience with this particular defendant is telling of his lack of standing with respect to every other suit he has filed. This was the only business that Mr. Tatum frequents on a regular basis. It is a local convenience store that Mr. Tatum uses to buy his groceries; he says that he

---

[59] *Id*. at 114-115.
[60] *Id*. at 125.
[61] *Id*. at 126, 133. The ice cream store located at 4201 Veterans Blvd. is a Marble Slab Creamery, which was suggested to Mr. Tatum. He could not provide an answer.

goes almost daily.[62] Mr. Tatum gave the Fair Zone Food Store #2 ample notice regarding their noncompliance with the ADA. He said that he "complained to them over and over" about the fact that they didn't have a ramp.[63] When, after putting Fair Zone Food Store #2 on notice of their noncompliance, they did not comply, Mr. Tatum filed an ADA suit against them; after doing so, a ramp was installed.

Audubon concedes that with respect to the Fair Zone Food Store #2, Mr. Tatum clearly had standing to sue under Title III of the ADA. This is the process that the ADA contemplates. Mr. Tatum's experience with the Fair Zone Food Store #2 is significant because it demonstrates that he is merely filing lawsuits against businesses where he has no true intent to return, presumably for the sake of obtaining attorney's fees.

### 6. Tatum v. Gordon-Karen Properties, LLC

On July 6, 2012, Mr. Tatum filed suit against Gordon-Karen Properties, LLC. When asked about Gordon-Karen Properties, LLC, Mr. Tatum was not familiar with the company.[64] He was unaware that Gordon-Karen Properties, LLC operates Church's Chicken. Mr. Tatum could not recall what was specifically wrong with the parking spaces that he alleged was a barrier for him at Church's Chicken, stating that he "would have to revisit to show it to you."[65] Mr. Tatum again made conflicting complaints about there being a non-accessible route from the parking lot to the facility while also arguing that there was a non-accessible route from the street to the facility. This is the only instance wherein Mr. Tatum was able to hypothesize how he would know if both routes were not accessible. He states that it is possible that the car was parked, but "its more than possible that someone, they be on the neutral ground right there,

[62] *Id*. at 135.
[63] *Id*. at 137.
[64] *Id*. at 138.
[65] *Id*. at 140.

playing checkers and doing all these kinds of things. I probably rolled over there and talked to somebody and came back."[66] However, Mr. Tatum was unable to say whether or not this scenario happened specifically.[67]

### 7. Tatum v. Jung Realty Co. Inc.

On July 26, 2012, Mr. Tatum filed suit against Jung Realty Co. Inc. When asked, Mr. Tatum did not know who Jung Realty Co. Inc. was or what type of business they operated.[68] Once informed that the defendant operated a Popeye's, Mr. Tatum could recall that he had an issue with the bathroom.[69] Mr. Tatum could also recall that the parking lot was uneven.[70] However, once again, Mr. Tatum made conflicting complaints about there being a non-accessible route from the parking lot to the facility while also arguing that there was a non-accessible route from the street to the facility, yet he could not explain how he knew there was a problem with both routes.[71]

### 8. Tatum v. 4 Pins Standing, LLC

On July 26, 2012, Mr. Tatum filed suit against 4 Pins Standing, LLC. Mr. Tatum alleges in his Complaint that the signs designating disabled parking spaces were improperly posted, but could not articulate what he meant, stating only that he "would have to show it to you. [He] can't just tell you about it. [He] can't visualize it in [his] head at the particular time. [He] would have to bring you out there and show it to you."[72]

---

[66] *Id*. at 141.
[67] *Id*. at 142.
[68] *Id*. at 142.
[69] *Id*. at 143-144.
[70] *Id*. at 146.
[71] *Id*. at 145.
[72] *Id*. at 148.

### 9. Tatum v. McDonalds Corporation

On October 26, 2012, Mr. Tatum filed suit against McDonalds Corporation. This suit was brought against a McDonalds location on Terry Parkway on the Westbank. Mr. Tatum could recall that he had problems with a ramp with no handrails and the bathrooms, but when asked specifically where the ramp was that he had a problem with, Mr. Tatum said that he was "not too familiar with the area…I would have to revisit this one."[73]

### 10. Tatum v. Terry Parkway WG, LLC

On October 26, 2012, Mr. Tatum filed suit against Terry Parkway WG, LLC. When questioned about this particular lawsuit, Mr. Tatum was not provided with a copy of the Complaint that he filed; he was simply asked to recall the problems that he allegedly encountered. After prompting, Mr. Tatum was able to recall that he sued a Walgreens, but he was unable to recall where the Walgreens was located, telling the undersigned to "refresh [his] memory."[74] When asked what was wrong with the Walgreens that made Mr. Tatum file suit, Mr. Tatum could reply only that "it should be in the complaint" because he could not remember.[75] Mr. Tatum said that he needed to know what area the Walgreens was in before he could try to remember the problems he alleges he had.[76] After being told again that the Walgreens was located on Terry Parkway on the Westbank, Mr. Tatum still could not recall any problems he had, stating only that he "know[s] it was something that took place that would cause for me to file against them."[77]

In almost every instance, Mr. Tatum said that he would have to revisit the premises in order to see what the alleged violation was. Mr. Tatum's lack of actual knowledge casts extreme

[73] *See* Exhibit A-4 at 151.
[74] *Id*. at 152.
[75] *Id*.
[76] *Id*. at 153.
[77] *Id*.

doubt as to his personal observation or experience of any of the alleged barriers upon which he brought suit. In all but one case that he filed, Mr. Tatum has not been back to any of the places he sued, since filing and settling the lawsuits.

In each suit filed, Mr. Tatum did not provide any notice to the business that he alleged was out of compliance with the ADA or give the business any opportunity to fix the problem before filing suit. At one point during Mr. Tatum's deposition, he stated that his goal in filing multiple lawsuits under the ADA was to bring businesses into compliance with the statute so that other disabled people could enjoy the same things that nondisabled people can.[78] However, Mr. Tatum later admitted that an underlying motivation for filing lawsuits without providing notice was that he liked to sue people.[79]

**ii. <u>Mr. Bizer and the Bizer Law Firm</u>**

Mr. Tatum is not Mr. Bizer's only plaintiff. Mr. Bizer has 41 nearly identical ADA cases filed in the Eastern District of Louisiana on behalf of a handful of other plaintiffs.[80] In addition to the 12 suits filed on behalf of Mr. Tatum, Mr. Bizer has filed 7 lawsuits on behalf of Wayne Gilmore[81], 9 lawsuits on behalf of Tasha Hebert, 8 lawsuits on behalf of Melva Mayes, and 5 lawsuits on behalf of Myshettia Reid.[82] Each suit uses the same boilerplate Complaint as Mr. Tatum's does—recycling the same issues of noncompliance against similarly situated local businesses. The material allegations are nearly identical.

---

[78] *See* Exhibit A-3. at 97 ("Mr. Tatum: I like to consider myself the advocate for people in my position and I feel as though these establishments should or are aware of the ADA requirements.")
[79] *Id.* at 100.
[80] For ease of reference, Audubon has compiled a table of Mr. Bizer's other plaintiffs with their case numbers, attached as Exhibit D.
[81] M. Ryan Casey, an affiliate of the Miami-based law firm of Ku & Mussman, P.A that Mr. Bizer also used to be affiliated with, has filed an additional 7 lawsuits on behalf of Mr. Gilmore in the Eastern District of Louisiana. *See* Exhibit D.
[82] *See* Exhibit D.

Furthermore, before Mr. Bizer began filing ADA suits in the Eastern District of Louisiana, he acted as "Of Counsel" for Ku & Mussman, P.A., a law firm based in Miami, Florida specializing in ADA litigation. Attorneys at Ku & Mussman have filed over 150 ADA lawsuits in Florida federal courts on behalf of several plaintiffs—using essentially the same boilerplate Complaint that Mr. Bizer employs.[83]

It is fair to conclude, based upon Mr. Tatum's inability to answer any questions about any of the lawsuits that have been filed on his behalf, that Mr. Bizer, or his expert, is the only person(s) who may have actual knowledge of the alleged ADA violations. However, the law does not extend a cause of action to Mr. Bizer or his expert; it requires the plaintiff to have such knowledge of the violations. Accordingly, Audubon's Motion to Dismiss should be granted, and Mr. Tatum's Complaint should be dismissed with prejudice.

## IV. Conclusion

That the ADA was enacted for the laudable and necessary purposes is beyond dispute. The Act has undoubtedly improved access for individuals with disabilities, and that is something to be celebrated. The Audubon Nature Institute believes in the ADA and takes compliance seriously; indeed, Audubon designed the Aquarium of the Americas with access for the disabled in mind.[84] However, the ADA does not abrogate the fundamental constitutional principle of standing. Mr. Tatum has not established that he has suffered an injury-in-fact as he does not establish that he has actual knowledge of the barriers that he alleges exist at the Aquarium. When viewed in light of all of the other suits filed by Mr. Tatum, wherein he also lacks actual knowledge of the alleged violations, it is clear that Mr. Tatum lacks standing.

---

[83] It is relevant to note that M. Ryan Casey, of the law firm of Ku & Mussman has filed several suits on behalf of Wayne Gilmore, one of Mr. Bizer's regular plaintiffs.

[84] See Article by Paul Leung entitled "New Orleans' Aquarium of the Americas," written April 1, 1990, attached as Exhibit E.

Because Mr. Tatum cannot articulate the problems he allegedly had at the Aquarium, he does not have standing to bring suit under the Title III of the ADA. As such, Audubon respectfully requests that this court dismiss Mr. Tatum's Complaint for lack of subject matter jurisdiction with prejudice.

**RESPECTFULLY SUBMITTED:**

**KINNEY, ELLINGHAUSEN, RICHARD & DESHAZO**

_/s/ Michael L. DeShazo_________________
MICHAEL L. DESHAZO (#29833)
CHRISTINE W. ADAMS (#34414)
1250 Poydras Street, Suite 2450
New Orleans, Louisiana 70113
Telephone: (504) 524-0206
Attorneys for Defendant, Audubon Nature Institute, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on February 26, 2013, I electronically filed a copy of the above and foregoing with the clerk of court using the CM/ECF system, which will send a notice of electronic filing to all parties in these proceedings.

_/s/ Michael L. DeShazo_________________